IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA WOOD,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COUNTY OF CONTRA COSTA, et al.,<br><br>　　　　　Defendants. | Case No. 19-cv-04266-MMC<br><br>**ORDER GRANTING MOTIONS TO DISMISS; DISMISSING ACTION; DIRECTIONS TO CLERK** |

Before the Court are the following four motions: (1) defendant Mary Carey's ("Carey") Motion, filed August 29, 2019, "to Dismiss Plaintiff's Amended Complaint"; (2) defendants Superior Court Judge Lois Haight ("Judge Haight") and Superior Court Judge Thomas Maddock's ("Judge Maddock") (collectively, "Judicial Defendants") Motion, filed August 30, 2019, "to Dismiss Plaintiff's Second Amended Complaint"; (3) defendants County of Contra Costa ("County"), Kellie Case ("Case"), Edyth Williams ("Williams"), Cecelia Gutierrez ("Gutierrez"), and Patricia Lowe's ("Lowe") (collectively, "County Defendants") Motion, filed August 30, 2019, "to Dismiss the Second Amended Complaint," and (4) defendant Erica Bains's ("Bains") Motion, filed September 17, 2019, "to Dismiss First Amended Complaint."[1] The motions have been fully briefed.

By order filed September 27, 2019, the Court took the Judicial Defendants' motion under submission. The Court deems the other three motions appropriate for decision on the parties' respective written submissions as well, VACATES the hearings scheduled

---

[1] A tenth defendant, Judith Lawrence ("Lawrence") has filed an answer.

thereon, and, having read and considered the papers filed in support of and in opposition to dismissal, hereby rules as follows.[2]

**BACKGROUND**

In the instant action, plaintiff Andrea Wood ("Wood") alleges the County's Department of Family & Child Services ("DFCS"), acting through social workers Case, Williams, and Gutierrez, along with Deputy County Counsel Lowe, instituted a state court action that resulted in the "removal" of Wood's three minor children, "TP, HP, and KP," from Wood's home. (See Amended Complaint ("AC") ¶¶ 10-11, 13-14, 48.)[3] According to Wood, the removal of her children was the result of an alleged "racketeering [e]nterprise," of which all defendants are members and which "concoct[ed] fictitious instances of child neglect." (See AC ¶ 63.)

Wood alleges the enterprise's assertedly unlawful acts began in August 2017, when Bains, one of Wood's neighbors, provided a "false report" about her to the DFCS (see AC ¶¶ 5, 9, 16), after which the DFCS "removed [her] children" (see AC ¶ 18). Wood alleges that, thereafter, Gutierrez filed in state court a "Detention Report based on fabricated allegations, with no evidence" (see AC ¶ 19), which filing described Wood as having engaged in "neglect" (see AC ¶ 54), and was provided to Judge Haight, the state

---

[2]To the extent the motions filed on behalf of Carey and the County Defendants also include a request that the Court declare plaintiff a vexatious litigant, the Court will address such requests by separate order.

[3]After filing her initial complaint on July 25, 2019, Wood subsequently, on August 13, 2019, August 16, 2019, and September 12, 2019, respectively, filed three documents titled "Amended Document," the latter two of which have been referred to by some of the defendants as a Second Amended Complaint and Third Amended Complaint. The first and second "Amended Complaints" were both signed by Wood on August 2, 2019, and are identical in content; on August 19, 2019, however, Wood filed seven exhibits as a supplement to the second "Amended Complaint. The third "Amended Complaint," although also identical in content to the first and second, differs in that it is unsigned, and, in addition, has four attached exhibit tabs, but no exhibits. As the last-filed "Amended Complaint" is unsigned, and lacks the exhibits Wood apparently intends to include in her operative pleading, the Court considers the second "Amended Complaint," i.e., the document filed August 16, 2019, as supplemented by the exhibits filed August 19, 2019, to be the operative pleading, and understands each motion to dismiss to be directed thereto.

court judge to whom the matter had been assigned (see AC ¶ 19.) Next, Wood alleges, Judge Haight appointed Carey, a private attorney, to act as counsel for Wood (see AC ¶ 20), and that Carey "immediately proceeded contrary to the wishes of [Wood]" (see AC ¶ 21).

Wood also alleges Judge Haight conducted the subsequent proceedings in a manner that caused Wood to be deprived of her right to have "custody of [her] children" (see AC ¶ 41); specifically, Wood alleges, "the court" issued a "notice" in which "the court" stated it "wishe[d] to adopt out HP and KP" (see AC ¶ 34). According to Wood, said determination was the result of a series of unlawful acts. In particular, Wood alleges, "all" defendants "obstruct[ed] justice by coaching TP, HP, and KP" (see AC ¶ 81),[4] Williams "committed perjury" on "numerous occasions" (see AC ¶ 87), Judge Haight made a "disapproving look" during Case's testimony, in order to convince Case to change her testimony in a manner unfavorable to Wood (see AC ¶¶ 29, 71), Judge Haight denied Wood's "right to call a witness" (see AC ¶ 35), Carey "block[ed]" Wood's "evidence" from being admitted and made "deal[s]" that were "strongly against [Wood's] interests" (see AC ¶¶ 22, 23), Judge Maddock stated he would have Wood "arrested" if she made "one mention of these matters to the mass media" (see AC ¶ 36), and Judge Maddock denied Wood access to "transcripts" that would have "implicated" him in violations of federal law (see AC ¶ 88).

Based on the above allegations, Wood asserts the following four claims: (1) a claim against all ten defendants for violation of 18 U.S.C. § 1961, the Racketeer Influenced and Corrupt Organizations Act; (2) a claim against Judge Maddock for

---

[4]Wood gives four examples of such coaching: (1) Bains "coached" TP to "tell untruths about [Wood] and that she hit HP" (see AC ¶ 69); (2) a "member of the [e]nterprise," unidentified by Wood, "coached KP to say she was hit with a whip" (see AC ¶ 73); (3) Judge Haight, Case, and Lawrence, an attorney appointed to represent HP, "coached HP . . . to untruthfully testify about [Wood's] sex life" and to "tell less than the whole truth" (see AC ¶¶ 90-91); and (4) a member or members of the "[e]nterprise," unidentified by Wood, threatened HP that he would be placed in "Juvenile Hall" unless he said "bad things" about Wood (see AC ¶ 70).

3

1 violation of the First Amendment; (3) a claim against all defendants other than Lawrence
2 for violation of the Fourteenth Amendment; and (4) a claim against all defendants, other
3 than Bains, Carey, and Lawrence, for violation of 42 U.S.C. § 1983. As relief, Wood
4 seeks compensatory damages, punitive damages, and an injunction to prohibit certain of
5 the defendants from further depriving her of her federal rights.

**DISCUSSION**

In their respective motions to dismiss, defendants argue the instant action is subject to dismissal under the Rooker–Feldman doctrine, see Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), and, as to some of the defendants, on the Younger doctrine as well, see Younger v. Harris, 401 U.S. 37 (1971).[5]

As discussed below, both doctrines limit a federal district court's ability to consider federal claims that implicate state court decisions. Before considering whether either doctrine, or both, apply to Wood's claims, the Court first summarizes the procedures for determining under California law whether a child may be declared a dependent of the juvenile court.

Under § 300 of the California Welfare & Institutions Code, if, inter alia, a "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally," see Cal. Welf. & Inst. Code § 300(a), or "serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child," see Cal. Welf. & Inst. Code § 300(b)(1), the child "is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court," see Cal. Welf. & Inst. Code. § 300.

A "social worker, who has reason to believe that a child falls within the definitions set forth in section 300 and is in immediate danger as a result thereof, may remove the

---

[5] In light of its findings set forth below, the Court does not address herein the additional arguments made by defendants in support of dismissal.

4

child from the home." Cynthia D. v. Superior Court, 5 Cal. 4th 242, 247-248 (1993). "A petition to have such a child declared a dependent child must be filed within 48 hours excluding nonjudicial days," and "[a] 'detention hearing' must be held by the juvenile court no later than the next judicial day." Id. at 248. If the minor is ordered "detained" by the state court, the "court must set a hearing on the dependency petition," which hearing is "commonly referred to as a jurisdictional hearing since it is at this hearing that the court determines whether the allegations in the petition that the minor comes within section 300, and thus within the juvenile court's jurisdiction, are true." See id. "When the court has found jurisdiction under section 300, it then must conduct a disposition hearing." Id. "If the court declares the child to be a dependent child of the juvenile court, it then considers whether the child may remain with the parents or whether the child must be removed from the parents." Id. If the child is removed from the parents, "the juvenile court must review the case at least once every six months," and, "[i]f the child is not returned to the parents at the 18-month review, the court must set the matter for a hearing" to determine if the parents' "parental rights" should be "terminated." See id. at 249.

A parent has "the right to challenge both the jurisdictional and dispositional findings and orders on appeal." See id. at 249 (citing Cal. Welf. & Inst. Code § 395). In other words, "the order entered at the dispositional hearing is a final judgment." See In re Adam D., 183 Cal. App. 4th 1250, 1261 (2010).

**A. Rooker-Feldman**

As noted, defendants, citing the Rooker-Feldman doctrine, contend this Court lacks jurisdiction over Wood's claims.

Under the Rooker-Feldman doctrine, "federal district courts lack jurisdiction to review the final determinations of a state court in judicial proceedings," even where "the challenge to the state court decision involves federal constitutional issues." See Doe & Associates Law Offices v. Napolitano, 252 F.3d 1026, 1029 (9th Cir. 2001). "The doctrine bars a district court from exercising jurisdiction not only over an action explicitly

1  styled as a direct appeal, but also over the de facto equivalent of such an appeal." See

2  Cooper v. Ramos, 704 F.3d 772, 777 (9th Cir. 2012). A "de facto appeal" is a civil action

3  in which the claim is "inextricably intertwined with the state-court judgment," meaning the

4  claim "succeeds only to the extent that the state court wrongly decided the issues before

5  it." See id. at 778 (internal quotation and citation omitted).

6  Here, it is readily apparent from the AC, and confirmed by Wood in her opposition

7  to the County Defendants' motion to dismiss (see Pl.'s Opp., filed September 3, 2019, at

8  5), that the state court conducted a jurisdictional hearing and a dispositional hearing and

9  made findings against Wood at each hearing. Consequently, the state court's findings,

10  that the allegations in the petition filed by the DFCS were true and that the children were

11  to be removed from Wood's custody, are final and appealable. Indeed, Wood, on

12  October 2, 2018, filed an appeal with the California Court of Appeal, which appeal is

13  pending. (See County Defs.' Req. for Judicial Notice, Ex. A.)[6]

14  Next, the instant claims are inextricably intertwined with the state court judgment.

15  Each of Wood's claims is based on the theory that the decisions rendered in state court

16  were wrong and that such decisions caused injury to Wood. Her claims that all

17  defendants entered into an "enterprise" to cause her to lose custody of her children, and

18  that certain of the defendants caused her to be deprived of her federal civil rights as a

19  result of the manner in which the state court conducted the proceedings, cannot succeed

20  without a showing that "the state court wrongly decided the issues before it." See

21  Cooper, 704 F.3d at 778 (internal quotation and citation omitted). Under such

22  circumstances, each of Wood's claims for relief, including her claim for damages, is

23  barred by the Rooker-Feldman doctrine, see id. at 781-82 (affirming, under "Rooker-

24  Feldman doctrine," dismissal of claim for damages, where claim could "succeed[ ] only to

---

[6]The Court grants the County Defendants' request, unopposed by Wood, to take judicial notice of the docket for California Court of Appeal Case No. A155450, Contra Costa County Children and Family Services Bureau v. A.W. See Rosales–Martinez v. Palmer, 753 F.3d 890, 894 (9th Cir. 2014) (holding courts "may take judicial notice of judicial proceedings in other courts").

6

the extent that the state court wrongly decided the issues before it"), and such bar applies, irrespective of whether an appeal is pending in state court, see Marciano v. White, 431 Fed. Appx. 611, 613 (9th Cir. 2011) (rejecting argument "Rooker-Feldman cannot apply" where there are "pending state court appeals"; finding "[t]he fact that [plaintiff] filed his federal suit before his state court appeals have concluded cannot be enough to open the door for a federal district court to review the state court decisions").

Lastly, the Court finds Wood's claims against Lawrence likewise are barred by the Rooker-Feldman doctrine. Although Lawrence has not filed a motion to dismiss, she relies on the Rooker-Feldman doctrine in her answer (see Lawrence's Answer at 7:3-6) and she and the moving defendants are similarly situated, in that she is alleged to be a member of the "enterprise" that sought to deprive Wood of the custody of her children. Under such circumstances, the findings set forth above are equally applicable to Wood's claims against Lawrence. See Fed. R. Civ. P. 12(h)(3) (providing, where court determines "it lacks subject-matter jurisdiction, the court must dismiss the action"); Silverton v. Dep't of Treasury, 644 F.2d 1341, 1345 (9th Cir.1981) (holding district court may "dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related").

Accordingly, Wood's claims are subject to dismissal in their entirety, and the instant action will be dismissed for lack of subject matter jurisdiction, without prejudice and without further leave to amend.

**B. Younger**

Carey, the County Defendants, and Bains, citing the Younger doctrine, argue the Court should abstain from considering Wood's claims.[7]

---

[7] Although Bains does not expressly refer to the Younger doctrine, the primary authority on which she relies, Coats v. Woods, 819 F.2d 236 (9th Cir. 1987), constitutes an "application of Younger abstention." See Bechdoldt v. Loveland, 2011 WL 867858, at *2 (D. Ore. March 10, 2011).

7

"The Younger doctrine, which counsels federal-court abstention when there is a pending state proceeding, reflects a strong policy against federal intervention in state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiff." Moore v. Sims, 442 U.S. 415, 423 (1979). Under the Younger doctrine, "abstention is appropriate in favor of a state proceeding if (1) the state proceedings are ongoing; (2) the proceedings implicate important state interests; and (3) the state proceedings provide an adequate opportunity to raise federal questions." See Beltran v. California, 871 F.2d 777, 781 (9th Cir. 1988) (internal quotation and citation omitted). Each of these requirements is met here.

First, although, as discussed above, the trial court's decisions are final under California law, the state court proceedings, for purposes of the Younger doctrine, nonetheless are "ongoing," in light of Wood's having appealed those decisions prior to instituting the instant action. See id. at 781-82 (holding "Younger abstention requires that the federal courts abstain when state court proceedings were ongoing at the time the federal action was filed"; finding state court proceedings are "ongoing" when proceedings before state appellate court are pending on date federal complaint filed).

Second, child custody proceedings implicate important state interests for purposes of Younger abstention, as "[f]amily relations are a traditional area of state concern." See Moore, 442 U.S. at 435; see also id. at 422 (holding, where parents claimed procedures applied in state court to remove children were unconstitutional, district court "should have abstained" from hearing case).

Third, Wood had, and still has, an adequate opportunity to raise in the state courts her allegations that the procedure applied in the juvenile court deprived her of due process or any other federal right, and, to the extent Wood argues she lacked an adequate opportunity to do so in the juvenile court, her ability to raise in the California Court of Appeal any federal challenge to the trial court's decisions satisfies this element. See H.C. ex rel. Gordon v. Koppel, 203 F.3d 610, 613 (9th Cir. 2000) (holding ability to raise federal issues in "California appellate courts" satisfies third Younger element).

Although an exception to the Younger doctrine exists where "the state court proceeding is motivated by a desire to harass or is conducted in bad faith," such "exception may not be utilized" unless facts to support it are both "alleged and proved." See Juidice v. Vail, 430 U.S. 327, 338 (1977). Here, even assuming Wood has adequately alleged in the AC that defendants acted "in bad faith" or were "motivated by a desire to harass," see id., Wood has failed to offer evidence to prove such allegations,[8] and, consequently, the exception does not apply.

Lastly, although the Judicial Defendants do not expressly rely on the Younger doctrine in their motion to dismiss, and Lawrence has not filed a motion to dismiss,[9] the findings set forth above are equally applicable to Wood's claims against those three defendants. See Silverton, 644 F.2d at 1345.

Accordingly, in addition to the Rooker-Feldman doctrine, the Court, in light of the Younger doctrine, declines to hear Wood's claims.[10]

//
//
//
//
//

---

[8] In support of each of her opposition briefs, Wood has filed a declaration in which she avers that the "facts stated" in her opposition are "true and correct." (See, e.g., Wood Decl., filed September 3, 2019, ¶ 1.). To the extent any of Wood's oppositions include statements that, arguably, might pertain to the Younger doctrine's exception, the statements are conclusory (see, e.g., Pl.'s Opp. to County Defs.' Mot. at 6 (asserting defendants acted "in flagrant disregard for the Rule of Law" and engaged in a "harassing interrogation" of a witness)), rather than factual, let alone based on facts as to which Wood has shown she has "personal knowledge," see Fed. R. Evid. 601.

[9] Lawrence has, however, relied on the Younger doctrine in her answer. (See Lawrence's Answer at 6:26-7:1.)

[10] The Court notes that "when damages are sought and Younger principles apply," a district court should stay the federal action, see Gilbertson v. Albright, 381 F.3d 965, 981-982 (9th Cir. 2004), unless "dismissal is indicated for some other reason," see id. at 982 n.18. Here, as discussed above, "dismissal is indicated" under the Rooker-Feldman doctrine.

9

**CONCLUSION**

For the reasons stated, defendants' motions to dismiss are hereby GRANTED, and the instant action is hereby DISMISSED, without prejudice and without further leave to amend.

The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: October 8, 2019

MAXINE M. CHESNEY
United States District Judge